Filed 1/12/24  P. v. Mason CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B326497 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A391401) |
| v. | |
| AUGUSTA MASON, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County.  Michael Garcia, Judge.  Affirmed.

Lenore O. De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Augusta Mason appeals the denial of his petition for resentencing under Penal Code[1] section 1172.6 (former § 1170.95)[2] at the prima facie stage. We conclude the superior court correctly determined appellant is ineligible for resentencing as a matter of law because the jury specifically found he intended to kill or intended to aid and abet the killing. Accordingly, we affirm.

Appellant was convicted by jury in 1984 of one count of first degree murder (§ 187), one count of attempted murder (§§ 664/187), and two counts of robbery (§ 211). The jury found true the special-circumstance allegation that the murder was committed during the commission of a robbery, which required the jury to find appellant intended to kill or intended to aid and abet the killing. (§ 190.2, subd. (a)(17).) The trial court sentenced appellant to state prison for life without the possibility of parole. (*People v. Mason* (May 29, 1986, B007493) [nonpub. opn.] (*Mason*).)

### FACTUAL[3] AND PROCEDURAL BACKGROUND

In April 1983, Julius Jefferson and his next door neighbor hired appellant to construct a wrought iron fence along their

---

[1] Undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

[3] The factual background is drawn from the statement of facts in this court's decision in the direct appeal of the judgment of conviction. (*Mason, supra*, B007493.) We set forth this background to give context to our analysis of whether the jury instructions foreclose the existence of a prima facie case.

property line. (*Mason, supra*, B007493.) Appellant appeared at the Jefferson residence on June 5, 1983, around 10:00 p.m., and the two men went outside to examine the location for the fence. While they were talking, Julius heard someone approach. Appellant assured him it was just his cousin, and the conversation resumed. As Julius was bending over to clear some debris from the area, he was suddenly unable to see and experienced a "ringing" sensation. Julius heard someone say, "We'd better hit him again." Julius reached into his back pocket and discovered that his wallet was missing. A second blow struck the back of his head. (*Mason, supra*, B007493.)

A neighbor discovered Thelma Jefferson's body on the back porch. She had died as a result of massive injuries caused by a minimum of four to five blows inflicted with a blunt instrument to the head. Julius was hospitalized after sustaining multiple injuries to his face and skull, including a depressed skull fracture, fractures to both the upper and lower jaws, nose, the bones surrounding his right eye, and the loss of most of his teeth. (*Mason, supra*, B007493.)

Upon returning home from the hospital, Julius discovered that a stereo turntable and his wife's purse were both missing. (*Mason, supra*, B007493.)

Appellant was convicted as charged, and the judgment was affirmed on appeal. (*Mason, supra*, B007493.)

Appellant filed his petition for resentencing pursuant to section 1172.6 in March 2021. The superior court appointed

---

(Cf. § 1172.6, subd. (d)(3) [facts set forth in appellate opinions may not be considered during the evidentiary hearing occurring after a prima facie case has been found to exist].)

3

counsel and initially issued an order to show cause.  But after further briefing, the superior court reconsidered its ruling, and denied the petition for failure to make a prima facie showing for relief.

## DISCUSSION

**Appellant Is Ineligible for Relief as a Matter of Law Because the Jury Found He Personally Acted With the Intent to Kill**

### A. *Applicable legal principles*

The Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) in 2018, effectively abolishing the natural and probable consequences doctrine in cases of murder and limiting the application of the felony-murder doctrine.  (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  With one narrow exception (§ 189, subd. (f)), the legislation effectively eliminated murder convictions premised on any theory of imputed malice—that is, any theory by which a person can be convicted of murder for a killing committed by someone else, such as felony murder or the natural and probable consequences doctrine—unless the People also prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to human life.  (§§ 188, subd. (a)(3) & 189, subd. (e).)

Senate Bill No. 1437 also enacted former section 1170.95 (now § 1172.6), which established a procedure for vacating the murder convictions of defendants who could no longer be convicted of murder because of the amendments to sections 188 and 189.  (Stats. 2018, ch. 1015, § 4; *Lewis*, *supra*, 11 Cal.5th at pp. 957, 959, 971; *People v. Gentile* (2020) 10 Cal.5th 830, 843.)  Section 1172.6, subdivision (c) requires the court to appoint

4

counsel when requested upon the filing of a properly pleaded petition for resentencing.  (*Lewis*, at pp. 963, 966.)

The superior court must then conduct a prima facie analysis with briefing "to determine whether the petitioner has made a prima facie case for relief."  (§ 1172.6, subd. (c); *Lewis, supra*, 11 Cal.5th at p. 971; *People v. Nieber* (2022) 82 Cal.App.5th 458, 469–470.)  In conducting this review, our Supreme Court has held that the superior court can and should look to the record of conviction.  (*Lewis, supra*, 11 Cal.5th at pp. 970–971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].)  And "[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the [superior] court may dismiss the petition."  (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).)

We review de novo the superior court's prima facie determination that a petitioner is ineligible for section 1172.6 relief as a matter of law.  (*People v. Coley* (2022) 77 Cal.App.5th 539, 545 (*Coley*); *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

**B.** ***The instructions required the jury to find appellant acted with the intent to kill in order to find the robbery-murder special circumstance true, even if appellant was not the actual killer***

*1.  The jury instructions*

As relevant to the instant appeal, the court instructed appellant's jury that "[t]he crime of murder is the unlawful killing of a human being with malice aforethought *or* the unlawful killing of a human being which occurs during the

5

commission of a robbery." (CALJIC No. 8.10 (1983 rev.) italics added.) The court charged the jury that, if it found the defendant guilty of murder, it must determine whether it was in the first or second degree. (CALJIC No. 8.70.) A failure to reach unanimous agreement on this question would compel a conviction for second degree murder. (CALJIC Nos. 8.71 (1979 rev.) & 8.74 (1976 rev.).)

The instructions included two possible theories of first degree murder: deliberate and premeditated murder, which required the jury to find that in addition to an intent to kill, the defendant carefully weighed the considerations for and against the killing in advance and decided to kill (CALJIC No. 8.20 (1979 rev.)); and felony murder, defined as "the unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission of the crime of robbery, and where there was in the mind of the perpetrator the specific intent to commit such crime" (CALJIC No. 8.21). The court also instructed that the jury could convict appellant as an aider and abettor to felony murder if it found he intended to commit the robbery and an accomplice in the robbery killed the victim, even if the killing was unintentional or accidental. (CALJIC No. 8.27 (1984 rev.).)

In the aider and abettor first degree felony-murder instruction, the court further advised the jury: "With respect to a killing which occurs during the commission of a robbery, you will note that an aider and abettor must have the intent or purpose of committing, encouraging, or facilitating the commission of the robbery. He does not have to have the intent to kill. [But] [w]ith respect to the special circumstance allegation, an aider and abettor must *also intend to aid in the killing of a human being*."

6

(CALJIC No. 8.27 (1984 rev.) italics added.)  In the event the jury convicted appellant of first degree murder, the instructions *required* the jury to unanimously determine beyond a reasonable doubt whether the robbery-murder special-circumstance allegation was true.  (CALJIC No. 8.80 (1984 rev.).)  Thus, if the jury found that "defendant was an aider and abettor but not the actual killer, it must be proved beyond a reasonable doubt that he intended to aid in the killing of a human being before [the jury was] permitted to find the alleged special circumstance of that first degree murder to be true as to defendant."  (*Ibid.*)

Finally, the court instructed the jury that "[t]o find that the [robbery-murder] special circumstance, referred to in these instructions as murder in the commission of robbery, is true, it must be proved:  [¶]  1.  That the murder was committed while the defendant was engaged in the commission of a robbery.  [¶] 2.  That the defendant intended to kill a human being, or intended to aid another in the killing of a human being, and [¶] 3.  That the murder was committed in order to carry out or advance the commission of the crime of robbery or to facilitate the escape therefrom or to avoid detection."  (CALJIC No. 8.81.17 (1984 rev.).)

Appellant's jury was not instructed on a natural and probable consequences theory of liability.[4]

---

[4] Appellant raises no claim of error based on the superior court's denial of relief as to his conviction for attempted murder. Any challenge to the ruling in this regard has therefore been forfeited.  (See *People v. Tran* (2022) 13 Cal.5th 1169, 1214.)  In any event, the jury instruction on attempted murder required a finding that appellant had an intent to kill in order to convict.  A

7

*2. The jury necessarily found that appellant personally harbored an intent to kill, and the preclusive effect of that finding bars relief under section 1172.6 in this case*

Appellant contends the superior court erred when it relied on the special circumstance finding to deny the petition at the prima facie stage. He asserts that the petition could properly be denied only if the record of conviction unequivocally shows he directly aided and abetted the murder or was a major participant in the robbery who acted with reckless indifference to human life. Appellant is mistaken.

Pursuant to the amendments to the felony-murder rule by Senate Bill No. 1437, a participant in a robbery in which death occurs is liable for murder, and thus ineligible for section 1172.6 relief, if one of the following is proved: (1) the participant was the actual killer; (2) he or she was not the actual killer, but aided the actual killer in the murder with the intent to kill; or (3) he or she was a major participant in the underlying felony who acted with reckless indifference to human life. (§ 189, subd. (e); *Strong, supra,* 13 Cal.5th at p. 710.) Our Supreme Court has held that a specific jury finding that the defendant had the intent to kill "is

petitioner is ineligible for relief if the jury instructions show that jurors were not instructed on any theory of liability for murder that allowed malice to be imputed to the defendant. (*People v. Cortes* (2022) 75 Cal.App.5th 198, 205.) Moreover, because no instruction allowed a conviction for attempted murder under the natural and probable consequences doctrine or any other theory of imputed malice, any challenge would fail. (*Coley, supra,* 77 Cal.App.5th at p. 548 ["Section [1172.6] applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].)

8

generally preclusive in section 1172.6 proceedings, i.e., it 'ordinarily establish[es] a defendant's ineligibility for resentencing under Senate Bill [No.] 1437 and thus preclude[s] the defendant from making a prima facie case for relief.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 453–454 (*Curiel*), quoting *Strong, supra*, 13 Cal.5th at p. 710.) Indeed, as the high court has observed, "it is difficult to foresee a situation in which a relevant jury finding, embodied in a final criminal judgment, would not meet the traditional elements of issue preclusion." (*Curiel*, at p. 454.)

A review of the complete charge to the jury in this case reveals that before appellant's jury could find the robbery-murder special circumstance true, the instructions explicitly and unambiguously required the jury to find that appellant intended to kill a human being himself or intended to aid another in the killing of a human being. We presume the jury understood and followed the instructions given. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 ["Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions"]; *People v. Thomas* (2023) 14 Cal.5th 327, 382.) Thus, even if appellant was not the actual killer, by finding the special circumstance true, the jury necessarily found appellant acted with the intent to kill. This jury finding on the issue of appellant's intent has preclusive effect and stands as a bar to relief under section 1172.6 in this case. (*Curiel, supra,* 15 Cal.5th at pp. 453–454; *Strong, supra,* 13 Cal.5th at p. 710.)

In this regard, appellant's reliance on *People v. Ervin* (2021) 72 Cal.App.5th 90 (*Ervin*) is misplaced.

In *Ervin*, a jury convicted defendant of burglary, robbery, and murder, with true findings on two felony-murder special-

9

circumstance allegations. (*Ervin, supra,* 72 Cal.App.5th at p. 94.) As to the murder charge, the jury rejected the allegation that defendant personally used a firearm. (*Ibid.*) On appeal from the denial of defendant's section 1172.6 petition at the prima facie stage, the court determined that the true finding on the special-circumstance allegations did not make defendant ineligible for relief as a matter of law. (*Id.* at p. 104.)

The jury received instructions on the pre-Senate Bill No. 1437 felony-murder rule and felony-murder special circumstances. (*Ervin, supra,* 72 Cal.App.5th at p. 107.) However, the special-circumstance instructions contained conditional language that was also ambiguous: " '[If you find beyond a reasonable doubt that the defendant was [either the actual killer or an aider or abettor, but you are unable to decide which], then you must also find beyond a reasonable doubt that the defendant intended either to kill a human being or to aid another in the killing of a human being in order to find the special circumstance to be true.]' " (*Ibid.*, italics omitted.) The appellate court found the conditional wording of this instruction permitted the jury to find the special circumstance true without having to determine the defendant's intent to kill as long as the jury unanimously agreed beyond a reasonable doubt that the defendant was an aider and abettor. (*Id.* at p. 108.) Moreover, the felony-murder instruction allowed the jury to find defendant guilty of murder based solely on his participation in the qualifying felony without the intent or major participant findings now required under subdivision (e) of section 189. (*Ibid.*) These flaws in the instructions and resulting ambiguities in the verdict left the appellate court in *Ervin* unable to conclude that the

defendant was ineligible for relief under section 1172.6 as a matter of law.  (*Ibid.*)

Here, by contrast, the special-circumstance instruction was not conditioned on the jury being unable to decide whether appellant was the actual killer or an aider and abettor.  Rather, before the jury could find the special circumstance true, it was required to find appellant intended to kill or intended to aid another in the killing.  *Ervin* is thus distinguishable and has no application to the instant case.

**C. *Appellant is ineligible for resentencing as a matter of law because aiding and abetting a robbery with the intent to kill constitutes felony murder under section 189, subdivision (e)(2)***

Despite the jury's finding of intent to kill, appellant contends that he is nevertheless entitled to section 1172.6 relief because the jury could have found that appellant aided and abetted the robbery without finding that he committed the requisite actus reus—an act that directly aided and abetted the murder.  To the contrary, the instructions and verdict reflect that the jury found the requisite actus reus and mens rea that make appellant ineligible for relief under section 1172.6 as a matter of law.

Senate Bill No. 1437 "significantly limited the scope of the felony-murder rule to effectuate the Legislature's declared intent 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*Strong, supra*, 13 Cal.5th at pp. 707–708.)  However, the amendments to the felony-murder rule made no change to the actus reus element of felony murder.

11

In the context of aider and abettor liability for first degree felony murder, the commission of a robbery *is* the actus reus for the murder conviction. (§ 189, subd. (a) ["All murder that is . . . committed in the perpetration of, or attempt to perpetrate, . . . , robbery, . . . is murder of the first degree"]; *People v. Clark* (2016) 63 Cal.4th 522, 615 (*Clark*) ["The actus reus requirement for an aider and abettor to first degree felony murder is aiding and abetting the underlying felony or attempted felony that results in the murder"].) The jury's finding that appellant aided and abetted a robbery which resulted in a murder was sufficient to satisfy the actus reus element of aiding and abetting a felony murder.

Appellant's argument was rejected in *People v. Lopez* (2023) 88 Cal.App.5th 566 (*Lopez*). There, the court found "no reason to interpret the actus reus requirement as anything different than what the felony-murder actus reus requirement was before Senate Bill [No.] 1437—'aiding and abetting the underlying felony or attempted felony that results in the murder.' " (*Id.* at p. 578, quoting *Clark, supra,* 63 Cal.4th at p. 615.) Indeed, because the purpose of the new law was to restore " ' "proportional responsibility in the application of California's murder statute . . ." ' [d]efendants who aid a qualifying felony with an *intentional plan* to kill (i.e., an intent to kill) are the exact type of offender . . . who can still be convicted of first degree murder under the recent changes to murder liability." (*Lopez*, at p. 579.)

In *People v. Pacheco* (2022) 76 Cal.App.5th 118, review granted May 18, 2022, S274102 (*Pacheco*), the Court of Appeal held that a true finding on a gang murder special circumstance

did not necessarily preclude relief under section 1172.6. (*Id.* at p. 127.) *Pacheco* is clearly distinguishable and thus inapposite.

The trial court in *Pacheco* instructed the jury it could find the defendant guilty of murder under the natural and probable consequences doctrine if he aided and abetted one of three target crimes (assault with a deadly weapon, assault, or disturbing the peace). (*Pacheco*, *supra,* 76 Cal.App.5th at p. 128, rev.gr.) As to the gang special circumstance, the court instructed: " 'The defendant is charged with the special circumstance of committing murder while an active participant in a criminal street gang . . . . [¶] To prove that this special circumstance is true, the People must prove that: [¶] 1. *A perpetrator* intentionally killed [the victim]; [¶] 2. At the time of the killing, *the defendant* was an active participant in a criminal street gang; [¶] 3. *The defendant* knew that members of the gang engage in or have engaged in a pattern of criminal gang activity; [¶] 4. The murder was carried out to further the activities of the criminal street gang; [¶] AND [¶] 5. *The defendant had the intent to kill at the time of the killing.*' " (*Id.* at pp. 127–128.)

Based on these instructions, the Court of Appeal determined that "the jury could have potentially found Pacheco intended to kill [the victim] under the gang special circumstance enhancement (the mens rea), but under the natural and probable consequence theory, Pacheco only actually aided and abetted the nontarget crime of disturbing the peace (the actus reus)." (*Pacheco*, *supra,* 76 Cal.App.5th at p. 128, rev.gr.) The court went on to conclude, "at least at the prima facie stage, Pacheco's gang special circumstance enhancement does not establish as a matter of law that Pacheco . . . both 'had the requisite intent' (the mens rea), and he 'engaged in the requisite acts' (the actus reus),

13

to prove he directly aided and abetted the target crime of murder." (*Ibid.*)

*Pacheco* has no application to the instant case for the simple reason that appellant's jury was not instructed on the natural and probable consequences doctrine. (See *Lopez, supra,* 88 Cal.App.5th at p. 577, fn. 8 ["Because this case does not turn on the trial court's use of the natural and probable consequences instruction, Lopez's reliance on [*Pacheco*] is misplaced"].) As the *Lopez* court explained, because "[s]ection 189, subdivision (a) defines 'murder in the first degree' as any murder that is 'committed in the perpetration of, or attempt to perpetrate [a qualifying felony],' " under the terms of the statute, "assisting a qualifying felony in which a death occurs is the same as assisting the actual killer in committing first degree murder, and vice versa." (*Id*. at p. 578.) Unlike *Pacheco*, by finding appellant was engaged in the commission or attempted commission of a qualifying felony in which a death occurred with an intent to kill, appellant's jury plainly found the elements—actus reus and mens rea—necessary to establish guilt under the current felony-murder rule. The jury's specific findings in this case thus establish appellant's ineligibility for relief under section 1172.6 as a matter of law.

## DISPOSITION

The order denying appellant's petition for resentencing under Penal Code section 1172.6 is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.